Tab Wood, OSB #115604
Email: twood@schwabe.com
Sean McClendon, OSB #031215
Email: smcclendon@schwabe.com
SCHWABE, WILLIAMSON & WYATT, P.C.
1211 SW 5th Avenue, Suite 1800
Portland, OR 97204
Telephone: 503-222-9981
Facsimile: 503-796-2900

Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| TILLAMOOK COUNTY CREAMERY ASSOCIATION, an Oregon Cooperative,<br><br>Plaintiff,<br><br>vs.<br><br>NORTHWEST DAIRY ASSOCIATION, a Washington Cooperative Association,<br><br>Defendant. | No.<br><br>**COMPLAINT**<br><br>(Breach of Contract, Declaratory Judgment – 28 U.S.C. §§ 2201-2202, and Injunctive Relief)<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff Tillamook County Creamery Association ("TCCA") alleges as follows:

## I. INTRODUCTION

1. This action arises from actions taken by Northwest Dairy Association ("NDA") to prematurely and wrongfully terminate its contract with TCCA a year early, in December 2026. That contract—the Pooling Benefits Allocation Agreement (the "Pooling Agreement")—has been

in effect between the parties since December 1, 2012 and governs how TCCA and NDA allocate, and share in, the substantial economic benefits of pooling their milk receipts under a federal order known as Federal Milk Marketing Order 124 ("FMMO 124"). The Pooling Agreement automatically renews on an annual basis at the end of each contract term, November 30th of each year, unless it is voluntarily terminated by either party, or involuntarily terminated (in the event a party becomes insolvent, liquidates its assets, declares bankruptcy, or otherwise ceases its business operations). To voluntarily terminate the Pooling Agreement, Section 3.A. of the Agreement requires the terminating party to provide the other party with notice of its intent to terminate at least 180-days prior to the end of the current contract term. On June 22, 2026, NDA notified TCCA of its intent to terminate the Pooling Agreement in December 2026, but that notice was received 161 days prior to November 30, 2026 (the end of the current term) and was therefore too late to be effective to terminate the Pooling Agreement and avoid the otherwise automatic annual renewal. TCCA promptly alerted NDA that the notice was improper and ineffective, but NDA has doubled down, refusing to rescind the improper notice or confirm it will abide by the Pooling Agreement until the end of the next applicable term, November 30, 20***27***.

2. Compounding NDA's improper repudiation of the parties' contract, on August 12, 2026, NDA unilaterally notified the Pacific Northwest Marketing Area Market Administrator (the federal regulator charged with enforcing FMMO 124) of NDA's intent to dismantle the parties' longstanding "Combining Letter" milk receipt pooling arrangement and replace it, in January 2027, with a new pooling system that entirely excludes TCCA. However, the Pooling Agreement expressly prohibits NDA from doing so because TCCA's rights under the Agreement are in full effect and, per the Pooling Agreement, will remain in full effect through at least November 30, 2027.



Schwabe, Williamson & Wyatt, P.C.
Attorneys at Law
1211 SW 5th Avenue, Suite 1800
Portland, OR 97204
Telephone 503-222-9981
Fax 503-796-2900

3. Thus, based on NDA's improper conduct, TCCA brings this action for breach of contract, declaratory judgment, and injunctive relief to enforce NDA's contractual obligations, to prevent the irreparable harm that would be caused by NDA's unilateral, premature, and wrongful termination of the Pooling Agreement and the Combining Letter, and to recover the damages, to the extent quantifiable, that TCCA has suffered, and will continue to suffer, as a result.

## II. PARTIES

4. Founded in 1909, plaintiff TCCA is an Oregon cooperative corporation with its principal place of business in Tillamook, Oregon. TCCA is a farmer-owned dairy cooperative that manufactures and sells dairy products under the brand name "Tillamook", primarily cheese, ice cream, and other value-added dairy products. The TCCA cooperative is currently comprised of approximately 50 members, all of which are dairy farms operating in the State of Oregon.

5. Upon information and belief, defendant Northwest Dairy Association ("NDA") is a Washington cooperative association with its principal place of business in Seattle, Washington. Upon further information and belief, NDA is the owner of Darigold, Inc. ("Darigold"), a Washington for-profit corporation and corporate subsidiary of NDA, through which NDA manufactures, processes, and sells a variety of dairy products under the brand name "Darigold."

## III. JURISDICTION AND VENUE

6. This Court has subject matter jurisdiction under 28 U.S.C. § 1332, based on the diversity of citizenship of TCCA and NDA. The amount in controversy, exclusive of interest and costs, exceeds $75,000 because the loss of future pooling revenue if NDA is permitted to improperly and prematurely terminate the Pooling Agreement and the Combining Letter readily exceeds that amount.

///



Schwabe, Williamson & Wyatt, P.C.
Attorneys at Law
1211 SW 5th Avenue, Suite 1800
Portland, OR 97204
Telephone 503-222-9981
Fax 503-796-2900

7. Venue is proper in this Court under 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claims occurred in this judicial district.

8. This Court has personal jurisdiction because NDA purposefully availed and avails itself of the privilege of conducting business in Oregon by contracting with TCCA in Oregon, conducting regular and sustained business activities in Oregon, and selling goods in Oregon, through its subsidiary Darigold, to Oregon residents and otherwise conducting business with its dairy farmer members in Oregon.

## IV. FACTUAL BACKGROUND RELEVANT TO ALL CLAIMS

### A. The USDA's Federal Milk Marketing Orders ("FMMOs")

9. In 1999, the United States Department of Agriculture ("USDA") amended its Agriculture Marketing Service regulations—7 C.F.R., Subtitle B, Chapter X (§§ 1000-1199)—to adopt eleven (11) separate Federal Milk Marketing Orders ("FMMOs"), which, according to the USDA, apply to about 75 percent of total U.S. milk production in the country.[1] [2]

10. The purpose of the FMMOs, according to the USDA, is "establish certain provisions under which dairy processors [also called "handlers"] purchase fresh milk from dairy farmers [also called "producers"] supplying a marketing area" and "to maintain stable marketing relationships for all handlers and producers supplying marketing areas, thus facilitating the complex process of marketing fresh milk."[3]

///

---

[1] 64 F.R. 47898-99 (Sept. 1, 1999).

[2] *See* https://www.ams.usda.gov/sites/default/files/media/DairyFMMOBooklet.pdf (last accessed Oct. 13, 2026).

[3] *See* https://www.ams.usda.gov/rules-regulations/moa/dairy (last accessed Oct. 13, 2026).



Schwabe, Williamson & Wyatt, P.C.
Attorneys at Law
1211 SW 5th Avenue, Suite 1800
Portland, OR 97204
Telephone 503-222-9981
Fax 503-796-2900

11. According to the USDA, "[t]he regulatory provisions of the individual FMMOs apply to handlers, not dairy farmers, and specify how dairy farmers supplying a marketing area will share the money from their raw milk sales."[4] The applicable USDA regulations (7 C.F.R. § 1000.9) define a "handler" as a processor of raw milk or a cooperative (an association of dairy farmers which has full authority in the sales of its members). There are two types of handlers: fluid (beverage milk) and manufacturing (cheese, ice cream, butter, etc.). As the USDA states in its literature discussing FMMOs, "[a]n FMMO must regulate fluid milk handlers—manufacturing handlers typically participate when it is economically beneficial."[5]

12. According to the USDA, the FMMO Program was enacted, in part, to establish uniform minimum monthly prices paid to farmers for their milk, through a three-step "pooling" process: (1) collecting dairy commodity market prices; (2) classifying milk by its end-use (there are four uniform "classes" of end-use that are used throughout the FMMO system[6]) and then determining handler prices based on the end-use; and (3) combining the value of that milk (referred to as "pooling") and then uniformly sharing the value among those farmers whose milk is pooled. In other words, this pooling process allows farmers to receive a uniform price for all milk in the pool regardless of what end product their milk was used for, thus, stabilizing a farmer's payment

---

[4] *See* https://www.ams.usda.gov/sites/default/files/media/DairyFMMOBooklet.pdf (last accessed Oct. 13, 2026).

[5] *Id.*

[6] The four uniform classes of milk are: Class I (fluid milk); Class II (milk used to make soft products, such as ice cream, cottage cheese, and yogurt); Class III (milk used to make hard cheese products, such as cheddar cheese); and Class IV (milk used to make butter and powdered milk products). *See* https://www.ams.usda.gov/sites/default/files/media/DairyFMMOBooklet.pdf (last accessed Oct. 13, 2026).



Schwabe, Williamson & Wyatt, P.C.
Attorneys at Law
1211 SW 5th Avenue, Suite 1800
Portland, OR 97204
Telephone 503-222-9981
Fax 503-796-2900

by making it independent of how the milk was used.[7] The Producer Price Differential ("PPD") is the mechanism by which the different valuation of various classes of milk is reconciled. This reconciliation usually (but not always) results in positive PPD that is paid to the handlers of Class III milk (milk used for hard cheese products, such as cheddar cheese) for periods in which such handlers pooled milk. PPD is calculated and paid on a monthly basis.[8] An example of how pooling works under the FMMO program is shown in this USDA graphic:




---

[7] *See* https://www.ams.usda.gov/sites/default/files/media/DairyFMMOBooklet.pdf (last accessed Oct. 13, 2026).

[8] *Id.*



Schwabe, Williamson & Wyatt, P.C.
Attorneys at Law
1211 SW 5th Avenue, Suite 1800
Portland, OR 97204
Telephone 503-222-9981
Fax 503-796-2900

13. The eleven (11) FMMOs adopted by the USDA govern eleven (11) corresponding FMMO "marketing areas" located throughout the country,[9] wherein dairy processors compete to purchase packaged fluid milk from dairy farmers supplying the marketing area.[10] FMMO regulations and area-specific orders in each marketing area are administered by a regional official called the "Market Administrator."[11]

14. Dairy processors in the Pacific Northwest—including those located in Tillamook, Morrow, and Clatsop Counties in Oregon and the entire State of Washington—are covered by the Pacific Northwest Marketing Area.[12] The Pacific Northwest Marketing Area is, in turn, governed by FMMO 124.[13]

**B. The Combining Letter and Combining Letter Parties**

15. On December 21, 2000, TCCA and its subsidiary Columbia River Processing Inc. (hereinafter collectively, "TCCA"), NDA, and Northwest Independent Milk Producers Association ("NWI") sent a letter to the Pacific Northwest Marketing Area Market Administrator (the "Market Administrator") to notify the Market Administrator of their intent to pool their

---

[9] The 11 FMMO Areas created by the USDA are depicted on the map provided by the USDA, on its website at: https://www.ams.usda.gov/sites/default/files/media/Federal%20Milk%20Marketing%20Orders%20Map.pdf (last accessed Oct. 13, 2026).

[10] *See* https://www.ams.usda.gov/rules-regulations/moa/dairy (last accessed Oct. 13, 2026).

[11] *See* https://www.ams.usda.gov/sites/default/files/media/DairyFMMOBooklet.pdf (last accessed Oct. 13, 2026).

[12] *See* 7 C.F.R. § 1124.2 (listing the territory in Pacific Northwest Marketing Area).

[13] *See* http://www.fmmaseattle.com/orderlanguage/fo124langPrior0625.pdf (pre-June 1, 2025 version of FMMO 124, last accessed Oct. 13, 2026); *see also* http://www.fmmaseattle.com/orderlanguage/fo124lang1225.pdf (current version of FMMO 124, last accessed Oct. 13, 2026).



Schwabe, Williamson & Wyatt, P.C.
Attorneys at Law
1211 SW 5th Avenue, Suite 1800
Portland, OR 97204
Telephone 503-222-9981
Fax 503-796-2900

receipts, under then-Section 1124.13(e)(2) of FMMO 124. This letter, along with a letter dated December 17, 2002 (adding Farmers Cooperative Creamery of McMinnville, Oregon ("FCC") to the list of pooling plants), are collectively known as the "Combining Letter" and the parties to the letter—TCCA, NDA, FCC, and NWI—are known collectively as the "Combining Letter Parties."

16. TCCA's status as a Combining Letter Party enables TCCA to pool milk onto FMMO 124 without being independently subject to FMMO 124's "handler" qualifying standards that would apply to TCCA but for the Combining Letter. This, in turn, exempts TCCA from FMMO 124's requirement to deliver at least 20% of TCCA's milk into the fluid milk system, while still allowing TCCA access to the Producer Price Differential ("PPD") from the FMMO 124 Producer-Settlement Fund for each month that milk is pooled under the Combining Letter. Absent the Combining Letter TCCA would not have access to the PPD.

17. The PPD that TCCA retains in connection with each month that it elects to pool under FMMO 124 is distributed by TCCA to each milk producer from whom TCCA purchased milk during such pooled month, based on the volume of milk the producer sold to TCCA that month. These payments are made not only to TCCA member farms, but also to other producers who sold milk to TCCA during a pooled month. Effectively, for each month where TCCA receives PPD, TCCA pays 33% of the PPD to NDA under the Pooling Agreement (as described below) and passes on the remaining 67% of the PPD proportionally on a hundred-weight (cwt) basis to TCCA's members and non-member suppliers.

**C. The Pooling Benefits Allocation Agreement**

18. Under the Combining Letter, TCCA was not required to pay out any of its net monthly pool draw of PPD from the Producer-Settlement Fund (TCCA's "Pooling Benefits") to any of the other Combining Letter Parties. As a result, in 2012, the Combining Letter Parties



Schwabe, Williamson & Wyatt, P.C.
Attorneys at Law
1211 SW 5th Avenue, Suite 1800
Portland, OR 97204
Telephone 503-222-9981
Fax 503-796-2900

decided that to fairly and equitably allocate certain benefits obtained by TCCA under the Combining Letter, TCCA, together with NDA, FCC, and NWI (the three of whom are collectively referred to as the "Combining Letter Parties excluding TCCA" in the Pooling Agreement) entered into the Pooling Benefits Allocation Agreement (the "Pooling Agreement").[14] An exact and true copy of the Pooling Agreement is attached hereto as **Exhibit 1**.

19. **Section 1** of the Pooling Agreement sets forth the formula used to calculate the allocation—between TCCA and the other Combining Letter Parties—of the Pooling Benefits received by TCCA in a given month for milk pooled under FMMO 124: "TCCA Monthly Pooling Benefit Payment = *TCCA FO 124 Net PPD x .33*[.]" In other words, 67% of the monthly Pooling Benefits go to TCCA and 33% go to the "Combining Letter Parties excluding TCCA."

20. Under **Section 2** of the Pooling Agreement, TCCA is required to pay directly to NDA (as the administrative agent of the "Combining Letter Parties excluding TCCA") the 33% share of monthly Pooling Benefits owed to the "Combining Letter Parties excluding TCCA" under the Pooling Agreement.

21. **Section 3** of the Pooling Agreement governs, in relevant part: (1) the term of the Pooling Agreement (an "Initial" 2-year term followed by automatically renewing 1-year "Additional" terms thereafter), (2) the "effective" date of the Pooling Agreement, and (3) the only mechanism under which a party may voluntarily[15] terminate its respective rights and duties under

---

[14] Over the years, FCC and NWI terminated their participation in the Pooling Agreement and the agreement is now only between TCCA and NDA.

[15] A party may involuntarily terminate the Pooling Agreement at any time under Section 3.C. of the Pooling Agreement in the event that party files for bankruptcy, becomes insolvent, discontinues its business operations, or voluntarily, or by bankruptcy court order, submits to liquidation. Involuntary termination is not at issue here.



Schwabe, Williamson & Wyatt, P.C.
Attorneys at Law
1211 SW 5th Avenue, Suite 1800
Portland, OR 97204
Telephone 503-222-9981
Fax 503-796-2900

the Pooling Agreement (namely, on at least 180-days' notice before to the end of the applicable term of the contract). Section 3 provides in relevant part (bold-face type added):

> 3. Term & Termination of Agreement – **This Agreement shall become generally effective, and specifically effective in regard to milk pooled by TCCA, beginning in December, 2012**, and shall continue for an initial term of 2 years ("**the Initial Term**"). **The Combining Letter Parties excluding TCCA each agree that they will not elect to terminate or give notice of termination under the Combining Letter unless and until the rights and obligations of TCCA under this Agreement have expired or been terminated in accordance with the terms of this Agreement.** For purposes of the preceding sentence, the parties agree under the Combining Letter that a Combining Letter Party's termination of rights under provisions 3. C. b and/or 3. C. c. below shall not constitute an election to terminate, or a giving notice of termination. **This Agreement shall automatically renew for additional terms of 1 year each (each an "Additional Term") until terminated in accordance with the provisions stated herein**:
>
> A. Any party to this Agreement may terminate such party's rights and duties under this Agreement by providing written notice of its intent to so terminate **at least 180 days prior to the end of the applicable Initial Term or Additional Term**. Such termination shall be effective **at the end of the applicable Initial Term or Additional Term**.

**D. TCCA's December 2012 Milk Pooling Under the Pooling Agreement**

22. Under § 1124.7(d)(3) of FMMO 124, pooling plants are required to notify the Market Administrator in writing before the first of the month in the month that the pooling is to become effective (*i.e.*, to pool in January of a given year, the pooling plant would need to provide written notice by December 31, and so on). § 1124.7(d)(3) further states that the pooling request will then remain in place from the month it becomes effective until the month after the Market Administrator is notified that it will be terminated.

23. Pursuant to § 1124.7(d)(3) of FMMO 124, TCCA provided notice to the Market Administrator, prior to December 1, 2012, of its intent to pool milk under FMMO 124 with the Combining Letter Parties for the month of December 2012.



Schwabe, Williamson & Wyatt, P.C.
Attorneys at Law
1211 SW 5th Avenue, Suite 1800
Portland, OR 97204
Telephone 503-222-9981
Fax 503-796-2900

24. TCCA then pooled its milk receipts with the other Combining Letter Parties for the entire month of December 2012—beginning on December 1, 2012—as reflected in TCCA's submission of USDA form "Report of Receipts and Utilization" to the Market Administrator.

25. For the December 2012 milk receipt pooling, TCCA received a payment of $425,121.56 of PPD from the FMMO 124 Producer-Settlement Fund.

26. On or about August 8, 2013, TCCA paid NDA for Invoice No. PPI128436. Invoice No. PPI128436 documented the reconciliation amounts of TCCA's 33% payment obligations to the "Combining Letter Parties excluding TCCA" under the Pooling Agreement for the milk receipts pooled from December 2012 through June 2013. The amount paid to NDA by TCCA attributable to December 2012, as reflected in Invoice No. PPI128436, was $140,290.11. $140,290.11 is exactly 33% of $425,121.56 (*i.e.*, the total PPD settlement amount that TCCA received for the December 2012 pooling). This August 8, 2013 payment (and the acceptance thereof) evidences performance under (and benefit from) the Pooling Agreement beginning on December 1, 2012.

**E. NDA's Repudiation of the Pooling Agreement Through Its Untimely Notice of Intent to Voluntarily Terminate the Agreement in December 2026**

27. On June 22, 2026, NDA's President and CEO Amy Humprhrey sent a letter to TCCA's President and CEO, David Booth, ("NDA's Termination Letter") to inform TCCA that, "[p]ursuant to Section 3 of the Pooling Allocation Agreement" NDA was providing TCCA "with prior written notice of [NDA's] intent not to renew the Pooling Agreement." NDA's Termination Letter continued, "[w]ith this notice, according to its terms and consistent with Section 3, the Pooling Agreement will terminate in December 2026." This letter is hereinafter referred to as the "NDA Termination Letter."



Schwabe, Williamson & Wyatt, P.C.
Attorneys at Law
1211 SW 5th Avenue, Suite 1800
Portland, OR 97204
Telephone 503-222-9981
Fax 503-796-2900

28. The NDA Termination Letter did not provide timely notice under the Pooling Agreement of NDA's intent to voluntarily terminate the Agreement "in December 2026."

29. Under Section 3.A. of the Pooling Agreement, a party to the Agreement may only voluntarily terminate "such party's rights and duties under th[e] Agreement by providing written notice of its intent to so terminate **at least 180 days prior to the end of the applicable Initial Term or Additional Term**." (Emphasis added.) Section 3.A. further states that "[s]uch termination shall be effective at the end of the applicable Initial Term or Additional Term."

30. Under Section 3 of the Pooling Agreement, the "Initial Term" of the Agreement began on December 1, 2012 and ended on November 30, 2014.[16] The Agreement then automatically renewed each consecutive year thereafter, for 1-year "Additional Terms", beginning on December 1, 2014 and continuing each subsequent December 1st up to the current date.

31. The last day of the current, applicable "Additional Term" of the Pooling Agreement is November 30, 2026. Accordingly, for NDA's notice of voluntary termination to be timely and effective under Section 3.A. of the Pooling Agreement for termination "in December 2026," such notice must have been provided by NDA to TCCA no later than one hundred and eighty (180) days prior to November 30, 2026—which is June 3, 2026.

32. The NDA Termination Letter is dated June 22, 2026, which is only 161 days before December 1, 2026, not the contractually-required 180 days.

---

[16] The conclusion that the Pooling Agreement became effective between the parties beginning on December 1, 2012 is further reinforced by the parties' course of dealing and performance under the Pooling Agreement, including the pooling of milk receipts for the entire month of December 2012 (beginning December 1, 2012) and TCCA's subsequent payment of the 33% share of PPD for December 2012 to the "Combining Letter Parties excluding TCCA."



Schwabe, Williamson & Wyatt, P.C.
Attorneys at Law
1211 SW 5th Avenue, Suite 1800
Portland, OR 97204
Telephone 503-222-9981
Fax 503-796-2900

33. On June 26, 2026, TCCA notified NDA in writing that the NDA Termination Letter was untimely and requested that NDA—by no later than July 15, 2026—revoke its stated intention to wrongfully terminate the Pooling Agreement in mid-December 2026.

34. On July 15, 2026, NDA responded, contending that its Termination Notice was timely and expressly stating that NDA would not revoke the NDA Termination Notice.

35. On July 30, 2026, TCCA again asked NDA, in writing, to revoke its stated intention to terminate the Pooling Agreement beginning in December 2026. TCCA's asked NDA to provide its final position on the matter by no later than August 15, 2026.

36. August 15, 2026 came and went without any further response from NDA, so TCCA wrote an additional letter to NDA on September 25, 2026. In that letter, TCCA demanded that NDA, in writing: (1) rescind its notice of voluntary termination of the Pooling Agreement for December 2026; (2) acknowledge the continuing effect of the Pooling Agreement and Combining Letter, and (3) reaffirm NDA's intention to perform thereunder. NDA has refused.

**F. NDA Breached the Pooling Agreement Through Its August 12, 2026 Request to the Market Administrator for a New Pooling System Status**

37. The current pool manufacturing plant system for TCCA and NDA on file with the Market Administrator is the system described in the Combining Letter. Under this system, TCCA and NDA have pooled milk receipts under FMMO 124 on a regular basis since the Combining Letters were submitted to the Market Administrator in 2000.

38. On or about August 12, 2026, NDA Vice President Makena Allbaugh emailed the Market Administrator to give notice—via a Request for Cooperative Pool Manufacturing Plant System Status (dated August 11, 2026)—of NDA's intent to terminate the Combining Letter system at the end of 2026 and to replace that system with a new pooling system under FMMO 124



Schwabe, Williamson & Wyatt, P.C.
Attorneys at Law
1211 SW 5th Avenue, Suite 1800
Portland, OR 97204
Telephone 503-222-9981
Fax 503-796-2900

solely involving Darigold's plants in the State of Washington (Sunnyside, Pasco, and Lynden) and beginning in January 2027.

39. At the time of NDA's August 12, 2026 notice to the Market Administrator, TCCA's rights and obligations under the Pooling Agreement had not expired or been terminated. In fact, at the time of such notice, NDA did not have any contractual basis to terminate the Pooling Agreement because the 180-day advanced notice window for termination under the currently applicable "Additional Term" had already expired without a timely notice. Thus, TCCA's rights and obligations under the Pooling Agreement continue to date.

40. NDA's August 12, 2026 notice to the Market Administrator was therefore a material breach of Section 3 of the Pooling Agreement, which states that "[t]he Combining Letter Parties excluding TCCA [a group which includes NDA] each agree that they will not elect to terminate **or give notice of termination** under the Combining Letter unless and until the rights and obligations of TCCA under this Agreement have expired or been terminated in accordance with the terms of this Agreement." (Emphasis added.)

41. On September 25, 2026, TCCA wrote to NDA to demand that, in addition to taking the actions described above in paragraph 36, NDA also immediately notify the Market Administrator, in writing, that NDA was rescinding its August 12, 2026 notice.

42. To date, NDA has refused to rescind its August 11, 2026 Request to the Market Administrator and has instead only reaffirmed its intention to terminate the Combining Letter system and begin a plant pooling system, which excludes TCCA, beginning in January 2027.

///

///

///



Schwabe, Williamson & Wyatt, P.C.
Attorneys at Law
1211 SW 5th Avenue, Suite 1800
Portland, OR 97204
Telephone 503-222-9981
Fax 503-796-2900

## V. CLAIMS FOR RELIEF

## FIRST CLAIM FOR RELIEF

**(Breach of Contract – The Pooling Agreement)**

**Count 1**

**(Anticipatory Repudiation of the Pooling Agreement via the NDA Termination Letter)**

43. TCCA realleges and incorporates by reference paragraphs 1 through 42.

44. The Pooling Agreement is a valid and enforceable contract between TCCA and NDA.

45. Under Section 3 of the Pooling Agreement, NDA must continue pooling its milk receipts with TCCA under FMMO 124 and the Combining Letter, unless and until: (1) NDA voluntarily terminates its rights and obligations under the Agreement by providing at least 180-days' notice of termination to TCCA before November 30, 2026, the end of the currently-applicable term of the Agreement (a termination which would then become effective at the end of the current applicable term); or (2) NDA involuntarily terminates the Agreement by filing for bankruptcy, becoming insolvent, discontinuing its business operations, or liquidating (either voluntarily or by bankruptcy court order).

46. TCCA has fully performed all of its obligations under the Pooling Agreement.

47. On June 22, 2026, NDA sent the NDA Termination Letter, wherein NDA informed TCCA that NDA intended to voluntarily terminate its rights and duties under the Pooling Agreement under Section 3.A. of the Agreement, effective December 2026. The NDA Termination Letter was untimely because for a voluntary termination in December 2026, NDA was required to provide TCCA with 180 days' notice of termination before the end of the current

///



Schwabe, Williamson & Wyatt, P.C.
Attorneys at Law
1211 SW 5th Avenue, Suite 1800
Portland, OR 97204
Telephone 503-222-9981
Fax 503-796-2900

term of the Pooling Agreement—November 30, 2026. 180 days before November 30, 2026 is June 3, 2026, not June 22, 2026.

48. TCCA sent three formal letters to NDA informing NDA that its Termination Letter was untimely and asking that NDA rescind its Termination Letter, acknowledge the continuing effectiveness of the Pooling Agreement and Combining Letter, and reaffirm NDA's intention to perform through the next applicable "Additional Term" of the Pooling Agreement—running from December 1, 2026 to November 30, 2027.

49. Through its response to TCCA's letters, as well as through its other statements and conduct since sending the NDA Termination Notice, NDA has clearly and unequivocally communicated that it will not perform its obligations under the Pooling Agreement after November 30, 2026.

50. NDA's statements and conduct therefore constitute a positive, definite, and unequivocal repudiation of its future obligations under the Pooling Agreement.

51. NDA's anticipatory repudiation of the Pooling Agreement entitles TCCA to immediately seek all available remedies under Oregon and federal law, including temporary, preliminary, and permanent injunctive relief, specific performance, declaratory relief, and damages.

52. As a direct and proximate result of NDA's anticipatory repudiation of the Pooling Agreement, TCCA has suffered and will continue to suffer damages and irreparable harm.

**Count 2**

**(Breach of Section 3 Due to Untimely Notice of Voluntary Termination)**

53. TCCA realleges and incorporates by reference paragraphs 1 through 52.

///



Schwabe, Williamson & Wyatt, P.C.
Attorneys at Law
1211 SW 5th Avenue, Suite 1800
Portland, OR 97204
Telephone 503-222-9981
Fax 503-796-2900

54. Pursuant to Section 3 of the Pooling Agreement, NDA is required to continue pooling its milk receipts with TCCA under FMMO 124 and the Combining Letter, unless and until it voluntarily terminates its performance under the Agreement and upon timely notice to TCCA of NDA's intent to voluntarily terminate the Agreement at the end of the current term of the Agreement.

55. As alleged above, NDA has failed to provide timely notice sufficient to voluntarily terminate the Pooling Agreement. By repudiating the Pooling Agreement and refusing to continue performing its contractual obligations through November 30, 2027, NDA has materially breached Section 3 of the Agreement.

56. As a direct and proximate result of NDA's breach of the Pooling Agreement, TCCA has suffered and will continue to suffer irreparable harm, as well as damages in an amount to be proven at trial. TCCA is entitled to immediately seek all available remedies under Oregon and federal law, including temporary, preliminary, and permanent injunctive relief, specific performance, declaratory relief, and damages.

**Count 3**

**(Breach of Section 3 Due to August 12, 2026, Notice to Market Administrator)**

57. TCCA realleges and incorporates by reference paragraphs 1 through 56.

58. Under Section 3 of the Pooling Agreement, the "Combining Letter Parties excluding TCCA," a group which includes NDA, each agreed "that they will not elect to terminate **or give notice of termination** under the Combining Letter unless and until the rights and obligations of TCCA under this Agreement have expired or been terminated in accordance with the terms of this Agreement." (Emphasis added.)

///



Schwabe, Williamson & Wyatt, P.C.
Attorneys at Law
1211 SW 5th Avenue, Suite 1800
Portland, OR 97204
Telephone 503-222-9981
Fax 503-796-2900

59. On or about August 12, 2026, NDA emailed written notice to the Market Administrator of NDA's intent to terminate the Combining Letter system on file with the Market Administrator at the end of 2026 and to replace that system with a new pooling system under FMMO 124 involving Darigold's plants in the State of Washington (Sunnyside, Pasco, and Lynden) beginning in January 2027. Attached to that email was NDA's August 11, 2026 Request to the Market Administrator to create this new pooling system in January 2027.

60. At the time that NDA sent its August 12, 2026 notice to the Market Administrator, TCCA rights and obligations of TCCA under the Pooling Agreement had neither expired nor been terminated.

61. NDA's August 12, 2026 notice to the Market Administrator was therefore a material breach of Section 3 of the Pooling Agreement.

62. Since NDA sent its August 12, 2026 notice to the Market Administrator, NDA has expressly refused TCCA's written requests that NDA formally advise the Market Administrator, in writing, that: (1) NDA's August 12, 2026 notice and August 11, 2026 Request (attached to that notice) are officially rescinded, and (2) the Combining Letter system will continue through the end of the next term of the Pooling Agreement on November 30, 2027. To date, NDA has refused both requests.

63. As a direct and proximate result of NDA's breach of the Pooling Agreement, TCCA has suffered and will continue to suffer irreparable harm, as well as damages in an amount to be proven at trial.

///

///

///



Schwabe, Williamson & Wyatt, P.C.
Attorneys at Law
1211 SW 5th Avenue, Suite 1800
Portland, OR 97204
Telephone 503-222-9981
Fax 503-796-2900

**SECOND CLAIM FOR RELIEF**

**(Declaratory Judgment – 28 U.S.C. §§ 2201–2202)**

64. TCCA realleges and incorporates by reference paragraphs 1 through 63.

65. There is an actual and justiciable controversy between the parties concerning their rights and obligations under the Pooling Agreement.

66. First, there is a controversy as to when the current applicable term of the Pooling Agreement (*i.e.*, the currently applicable "Additional Term") ends.

67. Second, there is a controversy as to whether, on August 12, 2026, the rights and obligations of TCCA under the Pooling Agreement had expired or been terminated by TCCA under the terms of the Pooling Agreement.

68. TCCA contends that: (1) the currently applicable term of the Pooling Agreement (*i.e.*, the currently applicable "Additional Term") ends on November 30, 2026; (2) NDA did not provide timely notice of its intent to voluntarily terminate the Pooling Agreement within 180-days prior to the end of the currently applicable "Additional Term," and, therefore, the Agreement remains valid and enforceable through November 30, 2027; (3) TCCA has not breached the Pooling Agreement; (4) TCCA's rights and obligations under the Pooling Agreement were in full force and effect on August 12, 2026; and (5) NDA's August 12, 2026 notice to the Market Administrator of NDA's intent to terminate the Combining Letter materially breached Section 3 of the Pooling Agreement.

69. NDA has taken a contrary position and asserted that its NDA Termination Letter is timely and that NDA may discontinue its performance under the Pooling Agreement and Combining Letter in December 2026.

///



Schwabe, Williamson & Wyatt, P.C.
Attorneys at Law
1211 SW 5th Avenue, Suite 1800
Portland, OR 97204
Telephone 503-222-9981
Fax 503-796-2900

70. A prompt and speedy judicial declaration of the rights and duties of the parties is necessary and appropriate at this time.

71. Under 28 U.S.C. §§ 2201–2202, TCCA requests that the Court enter judgment declaring that:

a. The Pooling Agreement became effective on December 1, 2012;

b. TCCA's and NDA's respective rights and obligations under the Pooling Agreement have been in full force and effect from December 1, 2012 up to the current date;

c. Each "Additional Term" under Section 3.A. of the Pooling Agreement begins on December 1 of each calendar year and ends on November 30 of the following calendar year;

d. The NDA Termination Letter was not timely pursuant to the Pooling Agreement and does not operate to allow NDA to withdraw from the Pooling Agreement in December 2026;

e. The Pooling Agreement remains valid and enforceable through November 30, 2027;

f. TCCA has not breached the Pooling Agreement;

g. NDA is obligated to continue pooling its milk receipts with TCCA pursuant to the terms of the Pooling Agreement and Combining Letter; and

h. NDA has no contractual right to cease full performance under the Pooling Agreement and the Combining Letter until November 30, 2027 at the earliest, assuming NDA complies with Section 3 of the Pooling Agreement as it relates to proper and timely notice.



Schwabe, Williamson & Wyatt, P.C.
Attorneys at Law
1211 SW 5th Avenue, Suite 1800
Portland, OR 97204
Telephone 503-222-9981
Fax 503-796-2900

**THIRD CLAIM FOR RELIEF**

**(Temporary, Preliminary, and Permanent Injunctive Relief)**

72. TCCA realleges and incorporates by reference paragraphs 1 through 71.

73. NDA is contractually prohibited from prematurely discontinuing pooling its milk receipts with TCCA, under the terms of the Pooling Agreement and the Combing Letter, prior to at least November 30, 2027.

74. On June 22, 2026, NDA informed TCCA that it intends to cease pooling its milk receipts with TCCA under FMMO 124, and to terminate the Pooling Agreement and the Combining Letter, in December 2026.

75. On August 12, 2026, NDA informed the Market Administrator that it intends to cease pooling its milk receipts with TCCA under FMMO 124, and to terminate the Combining Letter, in December 2026.

76. Despite TCCA's multiple written requests that NDA rescind its untimely termination of the Pooling Agreement and Combining Letter in December 2026 and acknowledge the continuing effectiveness of the same through November 30, 2027, NDA has refused.

77. Unless enjoined, NDA's conduct will cause TCCA immediate and irreparable harm.

78. Specifically, if NDA is permitted to unlawfully terminate the Combining Letter and Pooling Agreement in December 2026—as NDA has expressly stated it intends to do—TCCA will immediately lose its status as a Combining Letter Party and, with it, its ability to pool milk receipts under FMMO 124 and share in the PPD settlement payments distributed from the FMMO 124 Producer-Settlement Fund. Nor is this a benefit that TCCA can readily replace or mitigate through other means because TCCA cannot independently satisfy FMMO 124's "handler" requirement to



Schwabe, Williamson & Wyatt, P.C.
Attorneys at Law
1211 SW 5th Avenue, Suite 1800
Portland, OR 97204
Telephone 503-222-9981
Fax 503-796-2900

deliver at least 20% of TCCA's milk into the Class I fluid milk system since the vast majority of TCCA's milk is used in the manufacture of Class III dairy products (hard cheese products, such as cheddar) and Class II dairy products (soft products, such as ice cream and yogurt). TCCA has not identified other dairy processors in the Pacific Northwest Market Area who satisfy FMMO 124's "handler" requirement and would be available to pool with TCCA in a different system. As a result, TCCA presently has no alternative means of accessing the Pooling Benefits once NDA prematurely withdraws, and the harm from that loss—a loss that would be occasioned entirely by NDA's improper early termination of the current pooling system—cannot be undone after the fact by an award of money damages.

79. The loss of pooling status caused by NDA's illegal and premature termination of the Pooling Agreement and Combining Letter will also cause irreparable harm to TCCA in the form of disruptions to the decades' long relationships TCCA has built with its member farms, as well as key contractual relationships with other dairy producers who supply milk to TCCA, upon each of whom TCCA relies for consistent and continual output of high quality milk, and who, in turn, each rely on their share of the PPD payments paid to them by TCCA from the Pooling Benefits TCCA receives from its continued participation in pooling under FMMO 124. Hence, this loss of pooling status and the negative economic effect of the premature termination impacts not only TCCA, but also TCCA's members and other suppliers, and thereby threatens TCCA's ability to ensure an adequate long-term supply of milk to meet its manufacturing needs. TCCA believes that the loss of PPD would put additional financial pressure on dairy farms in the region, and some farms may cease operations. These are impacts on the Pacific Northwest dairy farming community, and in turn on TCCA, that no later monetary judgment can fully restore. Further, if NDA's new pooling system—built around Darigold's Sunnyside, Pasco, and Lynden plants—is



Schwabe, Williamson & Wyatt, P.C.
Attorneys at Law
1211 SW 5th Avenue, Suite 1800
Portland, OR 97204
Telephone 503-222-9981
Fax 503-796-2900

allowed to be established in January 2027, as NDA intends, unwinding that new arrangement to restore the status quo of the Combining Letter would be difficult, disruptive to the Pacific Northwest Marketing Area, and potentially impossible, leaving TCCA permanently excluded from the pooling structure it helped establish and relied upon for over two and a half decades.

80. These harms to TCCA's business relationships, goodwill, market position, and continued access to the FMMO 124 pooling system are not readily quantifiable and cannot be adequately remedied through an award of damages alone, underscoring their irreparable nature and the need for temporary, preliminary, and permanent injunctive relief.

81. The threatened harm is imminent and ongoing, as demonstrated by NDA's communications and announced plans to terminate Pooling Agreement and the Combining Letter in December 2026 and to begin a new pooling system under FMMO 124, which excludes TCCA, in January 2027.

82. TCCA has no adequate remedy at law.

83. The balance of equities favors preserving the status quo through temporary and preliminary relief and requiring NDA to continue performing under the Pooling Agreement and the Combining Letter through November 30, 2027.

84. The public interest, in addition to the allegations set forth above, further favors enforcement of lawful contracts and the preservation of ongoing commercial relationships.

85. TCCA requests the following temporary, preliminary, and permanent injunctive relief:

a. Enjoining NDA from wrongfully withdrawing from the Pooling Agreement and Combining Letter and ceasing to pool its milk receipts with TCCA under FMMO 124 any earlier than November 30, 2027;



Schwabe, Williamson & Wyatt, P.C.
Attorneys at Law
1211 SW 5th Avenue, Suite 1800
Portland, OR 97204
Telephone 503-222-9981
Fax 503-796-2900

b. Requiring NDA to maintain the status quo by rescinding its August 12, 2026 notice to the Market Administrator of NDA's intent to terminate the Combining Letter system in December 2026 and create a new pooling system under FMMO 124 in January 2027 involving Darigold's plants in the State of Washington (Sunnyside, Pasco, and Lynden);

c. Enjoining NDA from voluntarily terminating the Combining Letter with the Market Administrator in December 2026, or at any other time, until November 30, 2027; and

d. Enjoining NDA from creating a new pooling system under FMMO 124 with the Market Administrator, which excludes TCCA and includes Darigold's plants in the State of Washington (Sunnyside, Pasco, and Lynden) in January 2027, or at any other time, until November 30, 2027.

## VI. PRAYER

WHEREFORE, TCCA respectfully requests that the Court enter judgment in its favor and against NDA as follows:

A. Entering a Declaratory Judgment, under 28 U.S.C. §§ 2201–2202, declaring that:

i. That the Pooling Agreement became effective on December 1, 2012 and that TCCA's and NDA's respective rights and obligations under the Pooling Agreement have been in full force and effect from December 1, 2012 up to current date;

ii. That each "Additional Term" under Section 3.A. of the Pooling Agreement begins on December 1 of each calendar year and ends on November 30 of the following calendar year;

iii. That the NDA Termination Letter was not timely pursuant to the Pooling Agreement and does not operate to allow NDA to withdraw from the Pooling Agreement in December 2026;



Schwabe, Williamson & Wyatt, P.C.
Attorneys at Law
1211 SW 5th Avenue, Suite 1800
Portland, OR 97204
Telephone 503-222-9981
Fax 503-796-2900

iv. That the Pooling Agreement remains valid and enforceable through November 30, 2027;

v. That TCCA has not breached the Pooling Agreement;

vi. That NDA is obligated to continue pooling its milk receipts with TCCA pursuant to the terms of the Pooling Agreement and Combining Letter; and

vii. That NDA has no contractual right to cease full performance under the Pooling Agreement and the Combining Letter until November 30, 2027 at the earliest, assuming NDA complies with Section 3 of the Pooling Agreement as it relates to proper and timely notice.

B. Awarding TCCA money damages caused by NDA's breaches of the Pooling Agreement in an amount to be determined at trial, but in excess of $1 million;

C. Issuing the following temporary, preliminary, and permanent injunctive relief:

i. Enjoining NDA from wrongfully withdrawing from the Pooling Agreement and Combining Letter and ceasing to pool its milk receipts with TCCA under FMMO 124 any earlier than November 30, 2027;

ii. Requiring NDA to rescind its August 12, 2026 notice to the Market Administrator of NDA's intent to terminate the Combining Letter system in December 2026 and create a new pooling system under FMMO 124 in January 2027 involving Darigold's plants in the State of Washington (Sunnyside, Pasco, and Lynden);

iii. Enjoining NDA from voluntarily terminating the Combining Letter with the Market Administrator in December 2026, or at any other time, until November 30, 2027; and

iv. Enjoining NDA from creating a new pooling system under FMMO 124 with the Market Administrator, which excludes TCCA and includes Darigold's plants in the State of Washington (Sunnyside, Pasco, and Lynden) in January 2027, or at any other time, until November 30, 2027.

D. Ordering NDA to preserve the status quo pending final resolution of the Action;

E. Awarding TCCA its costs and disbursements incurred herein;

F. Awarding TCCA its reasonable attorneys' fees to the fullest extent permitted by applicable law;



Schwabe, Williamson & Wyatt, P.C.
Attorneys at Law
1211 SW 5th Avenue, Suite 1800
Portland, OR 97204
Telephone 503-222-9981
Fax 503-796-2900

G. Awarding pre-judgment and post-judgment interest as permitted by law; and

H. Granting such other and further relief as the Court deems just and proper.

Dated this 29th day of October, 2026.

Respectfully submitted,

SCHWABE, WILLIAMSON & WYATT, P.C.

By: *s/Tab Wood*
Tab Wood, OSB #115604
Email: twood@schwabe.com
Sean McClendon, OSB #031215
Email: smcclendon@schwabe.com

Attorneys for Plaintiff



Schwabe, Williamson & Wyatt, P.C.
Attorneys at Law
1211 SW 5th Avenue, Suite 1800
Portland, OR 97204
Telephone 503-222-9981
Fax 503-796-2900